# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| TIMOTHY MICHAEL DODD, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 1:15-cv-85-RDP |
| } | |
| CAROLYN W. COLVIN, Acting } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

## AMENDED MEMORANDUM OPINION[1]

Plaintiff, Timothy Michael Dodd, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.    Proceedings Below**

Plaintiff filed his applications for a period of disability, DIB, and SSI on October 11, 2011, alleging a disability onset date of September 1, 2010. (R. 224). On January 6, 2012, Plaintiff's applications were denied, (R. 125-29), and on January 19, 2012, Plaintiff timely requested an administrative hearing, which was held before an Administrative Law Judge ("ALJ") on May 7, 2013

---

[1] Amended to correct Plaintiff's last name.

via video. (R. 76-97). Both Plaintiff and Vocational Expert Linda S. Williams testified at the hearing. (*Id.*). Plaintiff was represented by attorney Daniel Brian Smith at the hearing. (*Id.*)

In the July 13, 2013 decision, the ALJ determined that Plaintiff was not eligible for DIB or SSI because he was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 16-26). Thereafter, Plaintiff requested review of the ALJ decision by the Appeals Council. (R. 9). After the Appeals Council denied Plaintiff's request for review on December 9, 2014, (R. 1-5), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of Plaintiff's alleged onset of disability, he was thirty-nine years old. (R. 13, 82). He completed high school and attended one year of college. (R. 84, 229). Plaintiff's past relevant work included work as a tack welder, a butcher, and materials handler. (R. 94, 264-79). According to Plaintiff, he has been unable to engage in substantial gainful activity since September 1, 2010, due to abdominal problems, a bulge on his right side, nerve pain, anxiety, panic attacks, depression, and difficulty sleeping. (R. 22, 228).

**II.    ALJ Decision**

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working ("Step One"). Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities ("Step Two"). Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations ("Step Three"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work

("Step Four"). The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work ("Step Five"). In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2015 (R.18, No. 1), and that he has not engaged in substantial gainful activity since his alleged onset of disability on September 1, 2010. (R.18, No. 2). The ALJ found that, during the relevant time period, Plaintiff suffered from the medically determinable impairments of degenerating hematoma in the abdomen and herniated L1 disc, which he characterized as "severe." (R. 18, No. 3). The ALJ found, however, that Plaintiff's mild retropulsion at C6 was a non-severe impairment because it did not cause more than minimal limitation in his ability to perform basic physical work activities. (R. 19).

At the second step in the relevant analysis, the Commissioner determines whether the claimant has a medically determinable impairment, or a combination of impairments, that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is severe if it "significantly limits" the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a); SSR 96-3p, 61 Fed. Reg. 34,468, 34,469 (July 2, 1996); *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987).  Examples of basic mental work activities include: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, regardless of age, education, or work experience." *Bridges*, 815 F.2d at 625 (quotations omitted).

As to Plaintiff's mental impairments, the ALJ found them to be non-severe as well. (R. 20). Specifically, the ALJ found that claimant's metal impairments of adjustment disorder and anxiety related disorder, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities, and are, therefore, not severe. (R. 19). In reaching this conclusion, the ALJ considered the four broad functional areas provided in the disability regulations for evaluating mental disorders. (R. 19-20). The ALJ found that Plaintiff had "mild" limitation in activities of daily living, social functioning, and concentration, persistence or pace, and that Plaintiff had not experienced any episodes of decompensation of extended duration.

(R. 19-20). Based on these findings, the ALJ concluded that Plaintiff's mental impairments were not severe. (R. 20).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 20, No. 4). The ALJ specifically considered Listing 1.04A for disorders of the spine in making this determination. (R. 20).

Based upon his review of the record, the ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)[2] with the additional limitations of the following: (1) he can push/pull as much as he can carry; (2) he is never to climb ramps or stairs; (3) he is never to climb ladders and scaffold; (4) he is restricted to never kneel or crawl; (5) he should never be exposed to unprotected heights or moving mechanical parts; (6) he is limited to simple, routine and repetitive tasks; (7) he is limited to simple work-related decisions; (8) he can occasionally interact with co-workers and with the public; and (9) he is limited to tolerating few changes in a routine work setting. (R. 21, No. 5). Aided by the testimony of a VE, the ALJ found that Plaintiff could not return to his past relevant work, which is heavy, skilled, and semi-skilled in nature (R. 25, No. 6), although he did determine there are jobs that exist in significant numbers that Plaintiff can perform, even considering his age, education, work experience, and RFC. (R. 25, No. 10). Specifically, the ALJ relied on the VE's testimony that Plaintiff could perform certain light, unskilled occupations that exist in significant

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the fully range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8 hour workday." SSR 83-10, 1983 WL 31251, *6 (1983).

numbers in the regional and national economy, such as inspector/hand packager, cleaner/ housekeeper, and small products assembler. (R. 26, No. 10). Thus, the ALJ found that Plaintiff was not under a "disability" at any time during the relevant period. (R. 26, No. 11).

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 6). Specifically, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because the "failure of the ALJ to identify the plaintiff's emotional problems as severe poisoned the remainder of the ALJ"s decision that a significant number of jobs exist in the national economy that the plaintiff could perform." (Doc. #6 at 3.)   Plaintiff insists that "[t]his case should be reversed and remanded so that all established 'severe' medical impairments can be considered in the disability evaluation process." (*Id.*).   Plaintiff also argues (although not explicitly) that the ALJ improperly gave little weight to his treating psychiatrist/psychologist Dr. Eddie Huggins, while giving greater weight to the non-treating physician, Dr. Robert Estock. (*Id.* at 7-12).

### IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court

may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

As discussed above, Plaintiff contends that the ALJ erred in finding that his mental impairments were non-severe. Although not stating it in these terms, Plaintiff also argues that the ALJ improperly gave little weight to his treating psychiatrist/psychologist Dr. Eddie Huggins, while giving greater weight to the non-treating physician, Dr. Robert Estock. The court disagrees with both assertions and addresses them in reverse order below.

### A. The ALJ properly analyzed Plaintiff's mental conditions and applied the correct legal standards with regard to the weight given to the opinions of Dr. Estock and Dr. Huggins.

The weight properly afforded to a medical opinion regarding the nature and severity of a plaintiff's impairments depends upon a number of factors, including the source's examining and

treating relationship with the plaintiff, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R. § 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440.

In this case, the ALJ articulated legitimate reasons (which meet the good cause standard) for discounting the opinion expressed by Dr. Huggins, and properly gave great weight to the opinion of Dr. Estock. The ALJ first considered the assessment of Dr. Robert Estock, a licensed psychiatrist and state agency psychological consultant.[3] (R. 19, 105-06). In January 2012, Dr. Estock reviewed the medical evidence then of record and applied the "psychiatric review technique," the process set forth in the regulations for assessing mental disorders. (R. 105-06). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00. Dr. Estock concluded that Plaintiff had medically determinable impairments for

---

[3] Non-examining consultants, such as Dr. Estock, are highly-qualified physicians who are also experts in Social Security disability evaluation, according to the regulations. See 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I); SSR 96-6p, 61 Fed. Reg. 34,466-01, 34,467 (July 2, 1996).

his anxiety and depression, *see* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04 (affective disorders), 12.06 (anxiety disorders), but that they were not severe in light of the four broad functional areas[4] known as the "Paragraph B" criteria. (R. 105-06). Dr. Estock opined that Plaintiff had mild limitation in the first three functional areas and no episodes of decompensation. (R. 106). Specifically, Dr. Estock noted that Plaintiff had no history of formal mental health treatment or hospitalizations. (R. 105-06). Plaintiff was on Ambien for sleep problems and Xanax for anxiety and had reported that his mental problems were almost completely due to his physical problems and associated issues. (Id.) Accordingly, Dr. Estock concluded Plaintiff's mental impairments were not severe. (R. 106).

The ALJ also considered the medical evidence from the time period after Dr. Estock's review. The ALJ noted that the mental health treatment evidence was from two very recent visits to a psychiatrist or psychologist on February 6, 2013 and March 14, 2013. (R. 546-51). Although the treatment notes are unsigned and do not identify the medical provider, Plaintiff testified that he was being seen by Dr. Eddie Huggins, Jr. (R. 86).

The notes from the February visit stated that Plaintiff complained of anxiety, shortness of breath, lack of sleep, crying spells, poor concentration, and sadness due to quality of life. (R. 546-47). He reported he had never been hospitalized for psychiatric reasons. (R. 547). The treatment note appears to indicate that at some prior time Plaintiff took anti-depressants, but there is no record of those medications. (R. 547). Dr. Huggins prescribed Prozac, Zyprexa, and Xanax. (R. 546).

---

[4] The four broad areas are: (1) restriction of activities of daily living; (2) difficulties in maintaining social functioning; (3) difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration.

9

At the visit in March 2013, Dr. Huggins noted Plaintiff's thought processes were mostly normal and that he "ruminate[d] on his physical decline." (R. 549). Dr. Huggins further noted Plaintiff's judgment and insight were fair, he was oriented times four, his memory was good, his attention/concentration was intact, his language was adequate, his fund of knowledge was intact, but that his mood and affect was depressed/tearful. (R. 550). Dr. Huggins diagnosed Plaintiff with depression and assigned a global assessment of functioning (GAF) score of 32.[5] (R. 549-50). Additionally, he completed a questionnaire regarding Plaintiff's functioning ability and opined that there was not a job Plaintiff could perform for a regular workweek due to his depression and anxiety. (R. 553-555).

The ALJ gave greater weight to the opinion of Dr. Estock because it was supported by the medical evidence of record, as discussed in detail above. (R. 19); *see also* 20 C.F.R. 404.1527(c)(3), (4) & (e)(2)(ii), 416.927(c)(3), (4) (e)(2)(ii); *Crawford*, 363 F.3d at 1158. In contrast, the ALJ gave little weight to the opinion of Dr. Huggins because (1) he had only recently started treating Plaintiff, (2) he had only seen Plaintiff on two occasions, and (3) he had only seen Dr. Huggins once a month (at best). (R. 19). The regulations specifically provide that the length of the treatment relationship and the frequency of the evaluations are factors to be considered when evaluating opinion evidence. *See* 20 C.F.R. §§ 404.1527(c)(2)(I) & 416.927(c)(2)(1). In addition, the ALJ discounted the opinion of Dr. Huggins that Plaintiff could not work because there was no other mental health record to support it. The Eleventh Circuit has consistently concluded that "good cause" exists to discount a

---

[5] The court notes that the Commissioner has declined to endorse the GAF scale for use in the disability programs and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Red. 50, 746, 50, 764-65 (Aug. 21, 2000). Additionally, in its most recent publication, the American Psychiatric Association abandoned the use of GAF scores "for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

treating physician's opinion where the opinion is not bolstered by the other medical evidence. *See Crawford*, 363 F.3d at 1159-60; *Phillips v. Barnhart*, 357 F. 3d 1232, 1240-41 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). For these reasons, the ALJ applied the proper legals standard when he assigned little weight to the opinion of Dr. Huggins and substantial evidence supports his analysis.

>   B.   The ALJ Properly Considered Plaintiff's Mental Impairments under the Four Broad Areas Used to Evaluate Mental Disorders.

Listing 12.04 covers affective disorders, which are defined as disorders "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. A claimant can show the required level of severity by satisfying either Paragraphs A <u>and</u> B or Paragraph C alone. *Id.* Paragraphs A and B are at issue here[6] and state as follows:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
> a. Anhedonia or pervasive loss of interest in almost all activities;
> Appetite disturbance with change in weight;
> Sleep disturbance;
> Psychomotor agitation or retardation;
> Decreased energy;
> f. Feelings of guilt or worthlessness;
> g. Difficulty concentrating or thinking;
> h. Thoughts of suicide; or
> I. Hallucinations, delusions, or paranoid thinking; or
> 2. Manic syndrome characterized by at least three of the following:
> a. Hyperactivity;
> b. Pressure of speech;
> c. Flight of ideas;

---

[6] Although the ALJ specifically found that "there was no evidence that establish the presence of the "C" criteria," (R. 19), Plaintiff does not discuss this finding in his argument to the court.

      d. Inflated self-esteem;
      e. Decreased need for sleep;
      f. Easy distractibility;
      g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
      h. Hallucinations, delusions or paranoid thinking; or
      3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

      <u>and</u>

      B. Resulting in at least two of the following:
      1. Marked restriction of activities of daily living;
      2. Marked difficulties in maintaining social functioning;
      3. Marked difficulties in maintaining concentration, persistence, or pace; or
      4. Repeated episodes of decompensation, each of extended duration.

*Id.* (emphasis added).

      The ALJ found that Plaintiff's mental impairment was not severe enough to meet the criteria of Paragraph B. (R. 19-20). This conclusion followed from his findings that (1) Plaintiff had only "mild limitations" in activities of daily living, maintaining social function, and sustaining concentration, persistence or pace, and (2) Plaintiff had experienced no episodes of decompensation of extended duration. (R. 19-20). The court does not find any errors in these findings.

      The ALJ adequately explained his assessment of each functional area and the reasoning behind his conclusions in each area. Under the area of activities of daily living, the ALJ found that Plaintiff was "capable of initiating and participating in activities of daily living such as cooking simple meals, shop for food and light chores independent of supervision or direction," and his performance of simple routine tasks is appropriate, effective and sustainable." (R. 19-20). As for social functioning, the ALJ found that Plaintiff was able to initiate social contacts, demonstrate cooperative behavior, but had "some difficulty communicating clearly." (R. 20). In the third

functional area of concentration, persistence, or pace, the ALJ found Plaintiff "can sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in routine and repetitive tasks." (R. 20). Finally, with respect to the fourth area, the ALJ found Plaintiff had not experienced any episodes of decompensation, noting that "[h]is record does not indicate significant, sustained loss of adaptive functioning." (R. 20).

Because substantial evidence supports a finding that Plaintiff's mental impairments caused no more than mild limitation in any of the first three functional areas, and no episodes of decompensation in the fourth area, the ALJ properly concluded his mental impairments were non-severe. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (stating that an impairment is considered not severe if the degree of limitation in these functional areas is "none" or "mild"); *Garrard v. Colvin*, 2014 WL 6972120, at *4 (N.D. Ala. Dec. 9, 2014) (concluding ALJ's finding that claimant's mental impairment was not severe followed from his findings that claimant had mild restrictions in two areas, moderate restriction in a third area, and no episodes of decompensation). As such, substantial evidence also supports the ALJ's finding that Plaintiff's mental impairments were non-severe.[7]

## VI.   Conclusion

For the reasons stated above, the Commissioner's final decision is due to be affirmed. A separate order will be entered.

---

[7] The court notes that although the ALJ found Plaintiff's mental impairments non-severe, she still made allowances for them in her RFC assessment. (R. 20). Specifically, the ALJ restricted Plaintiff to simple, routine, and repetitive tasks, simple work-related decision, and occasional interaction with co-workers and the public. (R. 20-21). The ALJ further limited Plaintiff to tolerating few changes in his work routine. (R. 21). These limitations to his RFC undermine Plaintiff's overall argument for reversal.

**DONE** and **ORDERED** this ____10th____ day of March, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE